436 A.2d 987

**ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES, Appellant,**

v.

**COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued May 18, 1981.

Decided Nov. 6, 1981.

Elliot A. Strokoff, Jerome H. Gerber, Harrisburg, for appellant.

John D. Raup, Robert J. Schwartz, Asst. Attys. Gen., for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

ROBERTS, Justice.

Appellant, Association of Pennsylvania State College and University Faculties, appeals from an order of the Commonwealth Court (DiSalle, J., joined by Craig, J., dissenting) vacating an arbitrator's award in favor of Donald Bortz, a member of its association. Unlike the Commonwealth Court, we conclude that the arbitrator did not exceed the scope of his authority. Hence, we vacate the order of the Commonwealth Court and reinstate the arbitrator's award.[1]

Bortz, a professor at East Stroudsburg State College, was asked to accept an administrative position as the director of the college's Educational Development Center (EDC). Bortz initially declined the position because his status as an academic faculty member entitled him to benefits not available to administrative faculty members. After receiving express promises from the college president that the acceptance of the EDC position would not affect his entitlement to benefits as an academic faculty member, Bortz assumed the duties of the directorship.

When a member of the academic faculty became ill, the Dean asked Bortz to teach one of the professor's courses. Bortz agreed and taught the course.

It is undisputed that the relevant writings provided for overtime compensation to be paid to academic faculty members who assume the additional burden of teaching an overload but contained no similar provision for administrative faculty members. Despite the express promise of the college administration, Bortz did not receive his overtime compensation. The college denied Bortz the extra compensation on the ground that he occupied an administrative post.

1. This case was reassigned to this writer on September 22, 1981.

Appellant filed a grievance on behalf of Bortz, alleging that Bortz was entitled to overtime compensation based upon the college president's representation that Bortz would not lose the benefits accorded to an academic faculty member. Following a hearing, the arbitrator held that because the EDC directorship was an administrative faculty position, the written provisions of the collective bargaining agreement precluded Bortz from receiving overtime compensation. Nonetheless, the arbitrator concluded that Bortz was entitled to recover because he justifiably relied on the express promises of the college administration. The arbitrator referred to *Restatement of Contracts* § 90 (1932) in his opinion.[2]

In vacating the arbitrator's award, the majority of the Commonwealth Court stated that: "When an arbitrator relies not upon the collective bargaining agreement to support an award but upon the *Restatement of Contracts*, it is apparent that he has exceeded his authority." Judge DiSalle, joined by Judge Craig, dissented on the ground that the collective bargaining agreement did not displace the applicability of fundamental principles of contract law. According to the dissenting opinion, the arbitrator was "obligated to give effect to the spirit as well as the letter of the agreement." Thus, "the arbitrator's award [was] rationally derived from the spirit, if not the precise language, of the collective bargaining agreement." *Commonwealth of Pennsylvania v. Association of Pennsylvania State College and University Faculties*, 46 Pa.Cmwlth. 608, 612, 407 A.2d 89, 90 (1979).

We share the views of the dissenting opinion of the Commonwealth Court. The Commonwealth Court majority erroneously assumed that a collective bargaining agreement consists of only the writing signed by the parties. On the

2. Section 90 provides:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

contrary, a collective bargaining agreement may encompass more than what has been reduced to writing. This Court's decision in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977), holds that an arbitrator's award must be sustained if it is a reasonable interpretation of the bargaining agreement. In determining the parties' collective bargaining agreement, the arbitrator may examine not only the writing but also "the circumstances surrounding its execution. . . ." Id., 473 Pa. at 593, 375 A.2d at 1275. As was recently observed by Mr. Justice Flaherty, "[t]he arbitrator must look at the full context of the agreement, along with '. . . other indicia of the parties intention . . .' in determining the intention of the parties." *Ringgold Area School District v. Ringgold Education Ass'n*, 489 Pa. 380, 414 A.2d 118 (1980), quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). See also *County of Allegheny v. Allegheny Prison Employees Independent Union*, 476 Pa. 27, 39, 381 A.2d 849, 855 (1977) (Roberts, J., dissenting) (past practices of parties to labor dispute may be considered by an arbitrator interpreting a collective bargaining agreement). The arbitrator may "look to guidance from many sources." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960). The Supreme Court of the United States has expressly stated:

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, 1417 (1960).

Here, the arbitrator stated in his opinion that although he could not find a basis for the award in the express terms of a writing, he did find such support in the actions and promises of the college administration. Thus, the arbitrator

simply determined that the promises fall well within the collective bargaining agreement and that the promises are properly enforceable. See *Straup v. The Times Herald*, 283 Pa.Super. 58, 423 A.2d 713 (1980). Therefore, the arbitrator's award is derived from a reasonable interpretation of the collective bargaining agreement and must be sustained.[3]

Accordingly, the order of the Commonwealth Court is vacated and the arbitrator's award reinstated.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or decision of this case.

NIX, J., files a concurring opinion.

LARSEN and KAUFFMAN, JJ., file dissenting opinions.

NIX, Justice, concurring.

I agree with the result reached by the majority, but I believe it is necessary to emphasize my view as to the very limited scope of review that should be exercised by courts over an arbitrator's award. *See e. g. Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981). Absent a showing of fraud in the decision-making process, the arbitrator's award should not be disturbed. *See Bieski v. Eastern Auto Forwarding Co.*, 396 F.2d 32 (3d Cir. 1968). Any attempt to interpret the "essence test" as a device to expand judicial review in this area, in my judgment, undermines the underlying purposes sought to be obtained through arbitration.

LARSEN, Justice, dissenting.

I dissent. The issue before us is whether in an *arbitration* proceeding an arbitrator can apply the doctrine of promissory estoppel to conversations between an individual bargaining unit member and members of management, under the type of circumstances present here, and modify a collective

---

**3.** We note that the collective bargaining agreement contains express language providing for the "fair and equitable resolution of grievances." In light of this language, the result cannot be said to be unreasonable.

bargaining agreement, I would hold that he cannot and would affirm the decision of Commonwealth Court, essentially for the reasons stated by the court below.

In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty*, 473 Pa. 576, 593–594, 375 A.2d 1267, 1275 (1977), this Court stated the appropriate standard for judicial review of arbitration awards:

> . . . where a task of an arbitrator . . . has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . ." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)

In *Community College of Beaver County, supra*, we noted that our standard of review and that first announced by the United States Supreme Court in *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), are not significantly different and that we perceive no conflict between the standards of review. The federal standard and policy are expressed as follows:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.
>
> *   *   *   *   *   *
>
> (A)n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. . He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence

from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. 363 U.S. at 596, 80 S.Ct. at 1360–1361.

In the instant proceeding the arbitrator himself rules that grievant had no right to the benefits claimed under the terms of the agreement and then specifically went outside the agreement for the basis for his award. Unless we are to repudiate the standard of review we articulated in *Community College of Beaver County*, the award cannot be sustained. Not only do I perceive no reasons of policy to justify changing our present standard even though application of the rule works an apparent injustice here, but I perceive the possibility of substantial damage to the administration of collective bargaining agreements were the standard changed.

I note that this dissent deals only with the power of an arbitrator under a collective bargaining agreement. It does not deal with the possible remedy that grievant probably has in a court of law.

KAUFFMAN, Justice, dissenting.

The majority expressly recognizes (1) that "the arbitrator held that . . . the written provisions of the collective bargaining agreement *precluded* Bortz from receiving overtime compensation," (p. 988) (Emphasis supplied), and (2) that the arbitrator's award was based solely on his finding of sufficient detrimental reliance upon a *subsequent promise* of the college administration to justify application of Section 90 of the Restatement of Contracts. (P. 988). I therefore must express my dissent to the majority's obviously inconsistent conclusion that "the arbitrator's award is derived from a reasonable interpretation of the collective bargaining agreement."

Article V of the collective bargaining agreement expressly provides that "[the arbitrator] is to have no authority to add to, subtract from, or modify this Agreement." I would hold that the arbitrator's reliance upon subsequent actions, prom-

ises, and Section 90, rather than upon the collective bargaining agreement, compels the conclusion that he exceeded his authority. Accordingly, I would affirm the order of the Commonwealth Court.